A95A1412. O'BRIEN FAMILY TRUST et al. v. GLEN FALLS INSURANCE COMPANY.
(461 SE2d 311)

BLACKBURN, Judge.

In 1979, Robin and Julia O'Brien purchased a personal comprehensive protection insurance policy (policy) from the Glen Falls Insurance Company (Glen Falls) through the Jones-Logan Insurance Agency (Jones-Logan). Glen Falls chose not to renew the policy, effective September 15, 1989, and, pursuant to Jones-Logan's request, the O'Briens surrendered the policy to Jones-Logan upon being given notice of non-renewal at or about that time. In November 1993, the appellants, the Robert M. O'Brien Family Trust (Trust), Robin M. O'Brien, and Julia O'Brien commenced this action against original defendant Continental Insurance Company (Continental), to recover legal expenses which the O'Briens incurred in defending a 1988 lawsuit which arose out of the Trust's sale of certain property in California. By consent of the parties, Glen Falls was later substituted for Continental. The trial court granted summary judgment for Glen Falls, and this appeal followed.

The Trust defended the underlying action, paying all expenses arising therefrom through November 1991; however, in December 1991, the O'Briens retained new California counsel and the services of an individual who acted in the capacity of a legal assistant. On November 18, 1992, the O'Briens gave Glen Falls written notice of the California action, requesting that Glen Falls defend the suit. Thereafter, without issuing a reservation of rights letter or entering into a

non-waiver agreement, Glen Falls settled the suit and reimbursed the O'Briens in the amount of $8,227.50, legal fees which the O'Briens incurred from the date they first gave Glen Falls written notice until Glen Falls' counsel was substituted for that employed by the O'Briens. In the complaint sub judice, the Trust and the O'Briens sought damages in the amount of $49,122.50, to pay for legal expenses incurred prior to notifying Glen Falls of the claim.

1. The O'Briens first contend that the trial court erred in granting Glen Falls' motion for summary judgment in that Glen Falls failed to issue a reservation of rights letter or enter into a non-waiver agreement upon undertaking their defense, estopping it from denying them pre-tender defense costs.

"It has long been the rule in Georgia that a liability insurer who assumes the conduct of the defense to an action with knowledge of facts constituting noncoverage and without disclaiming liability and giving notice of its reservation of rights is thereafter estopped from denying coverage. *Jones v. Ga. Cas. &c. Co.*, 89 Ga. App. 181, 185 (78 SE2d 861) (1953). The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position. *State Farm &c. Ins. Co. v. Anderson*, 104 Ga. App. 815 (123 SE2d 191) (1961)." *Preferred Risk Mut. Ins. Co. v. Southern Guaranty Ins. Co.*, 181 Ga. App. 688, 689 (353 SE2d 590) (1987). See also *Daniel v. Safeway Ins. Co.*, 199 Ga. App. 833, 834 (406 SE2d 266) (1991). It is undisputed in the record before us that Glen Falls undertook the O'Briens' defense in the instant case on November 18, 1992, upon receiving written notice of claim from the O'Briens.

While Glen Falls undertook the O'Briens' defense without issuing a reservation of rights letter or securing a non-waiver agreement, it does not follow that Glen Falls should be estopped from denying coverage in excess of that which it was contractually obligated to provide. See *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 610 (373 SE2d 671) (1988) ("The duty of an insurer to defend its insured is determined by the contract of insurance. [Cit.]"). We therefore must look to the policy to determine if the O'Briens' coverage may be deemed to include pre-tender legal expenses.

The policy pertinently required that the O'Briens give written notice of a claim under the policy as soon as possible. It required that they immediately send Glen Falls "every demand, notice, summons or other papers received" in any lawsuit filed against them. As to legal costs, the policy obligated Glen Falls to pay the expenses it incurred in providing the O'Briens a defense, any court costs charged to the O'Briens, any interest added to the judgment, and any reasonable expenses that the O'Briens incurred incident to Glen Falls' request for assistance. However, the policy made no provision for the payment of

pre-tender legal expenses. We cannot interpret the foregoing policy provisions for more than their plain meaning. *Horace Mann Ins. Co. v. Drury*, 213 Ga. App. 321, 322 (445 SE2d 272) (1994) ("Contracts of insurance, like other contracts, are to be construed according to their sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense." (Citations and punctuation omitted.)). Therefore, we conclude that the policy did not obligate Glen Falls to pay pre-tender legal expenses incurred by the O'Briens. Such a construction would render contractual terms necessary to trigger Glen Falls' performance under the policy meaningless. Accordingly, this enumeration of error is without merit.

2. The Trust and the O'Briens further enumerate that the trial court erred by granting Glen Falls' motion for summary judgment in that Glen Falls admitted in judicio that the date the O'Briens made a formal claim under the policy was a material issue in dispute.

"It is well-established that a party to a trial may make admissions in judicio in their pleadings, motions, and briefs. *Brownlow v. City of Calhoun*, 198 Ga. App. 710, 711 (402 SE2d 788); *Time Ins. Co. v. Lamar*, 195 Ga. App. 452 (2) (393 SE2d 734); *Summerlot v. Crain-Daly Volkswagen*, 138 Ga. App. 839 (227 SE2d 463). When an admission is so made 'it is a solemn admission in judicio. As such, it is binding upon the party and estops the party from denying the admission or introducing any evidence to controvert the admission, even if it is untrue.' Green, Ga. Law of Evid. (3rd ed.), Admissions, § 233." *Bannister v. State*, 202 Ga. App. 762, 766 (415 SE2d 912) (1992). However, "[a]dmissions in judicio apply only to facts in litigation." *Liberty Nat. Bank & Trust Co. v. Diamond*, 231 Ga. 321, 323 (201 SE2d 400) (1973). They do not apply when the admission is merely in the nature of the pleader's opinion as to fact or law. Green, supra, § 238.

By its response to the O'Briens' motion for summary judgment which pre-dated its own motion, Glen Falls asserted that "[a] clear issue of fact exists as to when and how notice was given to the insurer and whether there was ever any notice prior to November 18, 1992, triggering any liability for expenses prior to that for legal expenses prior to that date." As the foregoing constitutes no more than Glen Falls' opinion as to the facts, we find that it was not an admission in judicio. See *Clift & Goodrich, Inc. v. Mincey Mfg. Co.*, 41 Ga. App. 38, 39 (1) (152 SE 136) (1930) (rule that parties bound by their judicial admissions (OCGA § 24-3-30) applicable to admissions of fact not of opinion). Even were the contrary true, we would decline to disturb the trial court's grant of summary judgment to Glen Falls, as the question of whether or when Glen Falls was notified of the O'Briens' claim for legal expenses is not relevant to the question of whether

such expenses were covered by the policy. While Glen Falls reimbursed the O'Briens for legal expenses they incurred after tender and before the substitution of counsel for Glen Falls, a gratuitously made payment is insufficient to alter the plain meaning of the policy. See *Capes v. Bretz*, 195 Ga. App. 467, 468 (393 SE2d 702) (1990).

Viewing the facts, including Glen Falls' admission by responsive pleading, in the light most favorable to the non-moving party, we conclude that the grant of summary judgment for Glen Falls was proper. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

3. The O'Briens last contend that the trial court's grant of summary judgment for Glen Falls was error because jury questions exist as to whether Jones-Logan frustrated the O'Briens' efforts to obtain a copy of the policy, preventing them from determining the applicable notice of claim procedures under the policy.

Pretermitting the question of alleged obstructionist tactics, the record reflects that the O'Briens had possession of the policy when they were sued in November 1988 and that they retained possession of the policy until surrendering it approximately a year later incident to Glen Falls' decision not to renew the policy. "Parties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts." (Citation omitted.) *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987). This enumeration of error is also without merit.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED AUGUST 18, 1995.

*Branch, Pike & Ganz, Burt DeRieux, Barry G. Roberts, Michael S. Welsh*, for appellants.

*Drew, Eckl & Farnham, James M. Poe, Mary H. Hines*, for appellee.